UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: §
§
KEVIN PRESTO § CASE NO. 06-33618
§ (CHAPTER 7)
DEBTOR §

**THE OFFICIAL EMPLOYMENT-RELATED ISSUES COMMITTEE
OF ENRON CORP.'S MOTION TO EXTEND DEADLINE TO SEEK
DISMISSAL OF BANKRUPTCY CASE PURSUANT TO SECTION 707(b),
UNTIL AFTER TRIAL ON THE HOMESTEAD EXEMPTION**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY
AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD
IMMEDIATELY CONTACT THE MOVING PARTY TO
RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY
CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A
COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE
YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS
SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE
MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A
TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE
MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU
MUST ATTEND THE HEARING. UNLESS THE PARTIES
AGREE OTHERWISE, THE COURT MAY CONSIDER
EVIDENCE AT THE HEARING AND MAY DECIDE THE
MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR
ATTORNEY.**

Comes now the Official Employment-Related Issues Committee of Enron Corp.

("Enron Employee Committee") and files this Motion to Extend Deadline to Seek

Dismissal of Bankruptcy Case Pursuant to Section 707(B), Until after Trial on the

Homestead Exemption.

1.      On or about November 29, 2001, Kevin Presto received a $2 million "bonus" from Enron.  The next day Enron filed its now famous chapter 11 bankruptcy case.

2.      On December 9, 2005, the Enron Employee Committee obtained a $2 million fraudulent transfer judgment against Kevin Presto.

3.      On July 31, 2006, (after a serious of suspicious transfers not reflected on his statement of affairs)[1] Kevin Presto filed his voluntary petition for relief under chapter 7 of the Bankruptcy Code.

4.      The Enron Employee Committee objected to Kevin Presto's claim of entitlement to the Texas homestead exemption, in connection with his interest in unencumbered real property with a value of approximately $600,000.

5.      This Court has set aside April 4th and 5th 2007 for trial on the Enron Employee Committee's objection to the homestead.

6.      Under Bankruptcy Rule 1017, the unextended deadline to seek dismissal of Kevin Presto's chapter 7 bankruptcy case is pursuant to section 707(b) is November 27, 2006.

### Request for Relief

7.      The Enron Employee Committee seeks an order extending the deadline to seek dismissal of Kevin Presto's chapter 7 bankruptcy case under section 707(b) until thirty days following entry of a final, unappealable order that fully disposes of the Enron

---

[1] See, e.g., the Motion to Compel Michael D. Lykke d/b/a Mike Lykke Pools & Spa to Produce Documents Regarding Debtor's Installation of $100,000 Pool found at docket 36.

Employee Committee's objection to Kevin's Presto's entitlement to the Texas homestead exemption.

### Reasons for the Employee Committee's Request for Extension

IF THIS IS A "NO ASSET" CASE, THERE IS CAUSE FOR A FINDING OF "SUBSTANTIAL ABUSE" AND DISMISSAL UNDER SECTION 707(B).

8.      It is the Enron Employee Committee's position that in the event this is a "no asset" bankruptcy case, then in fact there is cause for section 707(b) dismissal.[2]

9.      If "no asset", then this case is an abuse under section 707(b).  Kevin Presto is forty years old.  According to his schedule I, he earns $10,000 per month.  He makes no car payments.   He lives in a luxurious unencumbered home, worth approximately $600,000.  The evidence will show he is disinclined to honor his alleged alleged $2,000 per month spousal support obligation[3].  And his schedule J inflates his monthly expenses, e.g., $1250 per month in property taxes, if true, is easily avoidable by living in a less luxurious home, $1000 per month for food is too much for a man who lives alone, and, on information and belief, Kevin Presto is not spending $1000 per month incurring reasonable travel expenses to see his children.

10.      In fact the docket reflects there is a presumption of abuse (docket number 5).

11.      If this Court overrules the Enron Employee Committee's objection to the homestead, absent the discovery of additional avoidance actions, the best interests of the

---

[2] Toward that end, the Enron Employee Committee would show that Kevin Presto's liability on the $2 million fraudulent transfer judgment is a "consumer debt" under the Fifth Circuit's relatively expansive "profit motive" test for adjudging whether a debt is sufficiently consumer to trigger section 707(b). *In re Booth*, 858 F2d 1051, 1055 (5th Cir. 1988) (a debt is not a consumer debt if it was incurred with an eye toward profit)

[3] In addition to his alleged $1,200 monthly child support obligation.

creditors would be served by the Enron Employee Committee's prosecution of dismissal pursuant to 707(b).

12.     On the other hand, if the Court sustains the Enron Employee Committee's objection to the homestead, up to $600,000 of value would flow to the bankruptcy estate, in which case the best interests of the creditors would be served by foregoing prosecution of dismissal for cause under section 707(b).

13.     Trial on the objection to homestead exemption is set for the first week of April 2007.

14.     It will not be clear whether dismissal under section 707(b) is in the best interest of the estate until entry of a final order disposing of the homestead exemption.

IN THE INTEREST OF JUDICIAL ECONOMY, A SECTION 707(B) CHALLENGE SHOULD BE COMBINED WITH ANY LATER SECTION 707(A) CHALLENGE, FOR WHICH THERE IS NO DEADLINE.

By contrast to section 707(b), the Code and Bankruptcy Rules impose no deadline to seek dismissal for "cause" under section 707(a).

15.     It is the Enron Employee Committee's position that in the event this is a "no asset" bankruptcy case, then in fact there is cause for section 707(a) dismissal.   That cause includes the presence of the following factors:

- There is pre-petition wrongdoing by the Debtor (the fraudulent transfer from Enron);

- Debtor filed bankruptcy to avoid the large judgment owed to the Enron Employee Committee which judgment flowed from his pre-bankruptcy wrong-doing;

- When Debtor had reason to know about his liability for the $2 million "bonus" he failed to adequately cut back on his lavish life-style;

- Debtor has engaged in suspicious pre-petition asset transfers motivated by a desire to shield assets from his creditors; and

- Debtor willfully wasted non-exempt assets when he knew about his liability to the Enron Employee Committee and other creditors.

16.     If this Court overrules the Enron Employee Committee's objection to the homestead, absent the discovery of additional avoidance actions, the best interests of the creditors would be served by the Enron Employee Committee's prosecution of dismissal pursuant to 707(a).

17.     On the other hand, if the Court sustains the Enron Employee Committee's objection to the homestead, up to $600,000 of value would flow to the bankruptcy estate, in which case the best interests of the creditors would be served by foregoing prosecution of dismissal for cause under section 707(a).

18.     Trial on the objection to homestead exemption is set for the first week of April 2007.  Only after that trial can the Court adequately determine whether dismissal under section 707(a) is in the best interest of the creditors.

19.     Moreover, it would be a waste of judicial resources to first take up Enron Employee Committee's 707(b) challenge, and then six months later, take up a separate section 707(a) challenge.

EXTENSION OF THE DEADLINE IS APPROPRIATE IN VIEW OF KEVIN PRESTO'S BAD
FAITH DISCOVERY RESPONSES.

20.     Written deposition questions submitted by the Enron Employee
Committee to Kevin Presto seek information about the location and disposition of the $2
million he acquired from Enron on the day before its chapter 11 bankruptcy.

21.     It is the Enron Employee Committee's position that Kevin Presto's
answers to those questions cut to the heart of the two over-arching policies served by the
relief available to individuals under chapter 7 of the Code, that is, a debtor's entitlement
to a chapter 7 bankruptcy discharge of debt, and the potential value of the bankruptcy
estate to the debtor's creditors.

22.     At Kevin Presto's request, the Enron Employee Committee agreed to his
taking additional time (to November 21, 2006) to respond to the written deposition
questions.

23.     Kevin Presto served his responses and "answers" to the written deposition
questions. Unfortunately, those responses reflect a refusal to answer some even basic
questions (dates he lived at certain addresses, occupation and address of employment),
without explanation from Kevin Presto.

24.     Moreover, review of Kevin Presto's initial document production reflects
the same lack of seriousness.

25.     The undersigned has endeavored to remedy the discovery deficiencies
without taking the Court's time but anticipates the need to file motions to compel this
week, given the Court's February 27, 2007 discovery cut off (with respect to the objection
to homestead).

26.    Kevin Presto's unserious and materially lacking discovery responses are additional cause for extension of the deadline to seek dismissal pursuant to section 707(b).

Prayer

The Enron Employee Committee prays the Court grant the Official Employment-Related Issues Committee of Enron Corp.'s Motion to Extend Deadline to Seek Dismissal of Bankruptcy Case Pursuant to Section 707(B), Until after Trial on the Homestead Exemption.

Respectfully submitted November 27, 2006.

**McCLAIN, MANEY & PATCHIN, P.C.**

By:  _/s/Annie E. Catmull_____
     Annie E. Catmull
     State Bar of Texas Number:  00794932
     McClain, Maney & Patchin, P.C.
     711 Louisiana Street, Suite 3100
     Houston, Texas 77002
     Email:  catmull@mcclainmaney.com
     Telephone:  (713) 654-8001
     Telecopy:   (713) 654-8818

**ATTORNEYS FOR THE OFFICIAL
EMPLOYMENT-RELATED ISSUES
COMMITTEE OF ENRON CORP.**